IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ELIZABETH W.,

             Plaintiff,

         v.                                Civil Action No.
                                        6:23-CV-1017 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

             Defendant.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF

OFFICE OF PETER W. ANTONOWICZ    PETER W. ANTONOWICZ, ESQ.
148 West Dominick Street
Rome, NY 13440

FOR DEFENDANT

SOCIAL SECURITY ADMIN.          KRISTINA D. COHN, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>ORDER</u>

     Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C.

§§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on January 15, 2025, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1)    Defendant's motion for judgment on the pleadings is GRANTED.

2)    The Commissioner's determination that the plaintiff was not

---

[1]    This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

disabled at the relevant times, and thus is not entitled to benefits under the

Social Security Act, is AFFIRMED.

     3)    The clerk is respectfully directed to enter judgment, based

upon this determination, DISMISSING plaintiff's complaint in its entirety.

_____

David E. Peebles
U.S. Magistrate Judge

Dated:    January 16, 2025
             Syracuse, NY

UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
ELIZABETH W.,

                          Plaintiff,

vs.                              6:23-CV-1017

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
-------------------------------------------x

         Transcript of a **Decision** held during a

Telephone Conference on January 15, 2025, the

HONORABLE DAVID E. PEEBLES, United States Magistrate

Judge, Presiding.


                  A P P E A R A N C E S

                    (By Telephone)

For Plaintiff:        PETER W. ANTONOWICZ, ESQ.
                      Attorneys at Law
                      148 West Dominick Street
                      Rome, New York  13440

For Defendant:        SOCIAL SECURITY ADMINISTRATION
                      Office of the General Counsel
                      6401 Security Boulevard
                      Baltimore, Maryland  21235
                        BY:  KRISTINA D. COHN, ESQ.


            *Jodi L. Hibbard, RPR, CSR, CRR*
         *Official United States Court Reporter*
               *100 South Clinton Street*
            *Syracuse, New York  13261-7367*
                    *(315) 234-8547*

1          (The Court and all counsel present by

2            telephone.)

3          THE COURT:  So the first issue I should raise with

4    you just to be sure, Attorney Antonowicz, is the question of

5    consent.  When this case was initially filed, it was referred

6    to Magistrate Judge Thérèse Wiley Dancks.  The consent form

7    that was filed as Docket Number 4 specifically consented to

8    her jurisdiction to hear and decide the case.  When the case

9    was transferred to me, there was a docket entry that required

10   the plaintiff to notify the court if consent was being

11   withdrawn based upon the transfer.  There was no such

12   notification, but I wanted to ensure, do you consent to my

13   hearing and deciding this case?

14          MR. ANTONOWICZ:  Your Honor, at the time that that

15   happened I was not under the effects of any medications, and

16   I did not object to you being assigned and I still don't

17   object to it.

18          THE COURT:  Thank you.  Plaintiff has commenced

19   this proceeding pursuant to 42 United States Code Sections

20   405(g) and 1383(c)(3) to challenge an adverse determination

21   by the Commissioner of Social Security finding that she was

22   not disabled at the relevant times and therefore ineligible

23   for the benefits sought.

24          The background is as follows:  Plaintiff was born

25   in July of 1988, she is currently 36 years of age.  She

1    stands 5 foot 9 inches in height and weighs approximately

2    225 pounds.  Plaintiff has lived in Wampsville, New York

3    since approximately December of 2020 with a fiance.  She has

4    two children that were born in May of 2018 and January of

5    2023.  The father of those children apparently is deceased.

6    She receives help caring for the children from her father.

7    Plaintiff is a high school graduate, she was in regular

8    classes while in high school.  She also has approximately two

9    years of college education, and has taken an auto service

10   course.  She is right-handed.  Plaintiff stopped working in

11   January of 2018, at the time she was pregnant.  In the past

12   she has worked as a cashier and assistant store manager, a

13   cook, dishwasher, housekeeper, and manual farm laborer.

14          Physically, plaintiff suffers from multiple

15   impairments including obesity, polyarthropathy, lumbar

16   degenerative disc disease, cervical degenerative disc disease

17   with radiculopathy, bilateral carpal tunnel syndrome, and

18   status post-hernia repair which occurred in February of 2020.

19   She has also been diagnosed and treated for hyperlipidemia

20   and hyperthyroidism, but as the administrative law judge

21   concluded in this case, they are not sufficiently severe to

22   impair -- severe to impair her ability to perform work

23   functions.

24          Mentally, plaintiff suffers from depressive

25   disorder, anxiety disorder, post-traumatic stress disorder,

1    obsessive compulsive disorder, panic disorder.  She has been

2    treated but not received any psychiatric hospitalization.

3    Plaintiff's activities of daily living including the ability

4    to dress, groom, bathe, cook, clean, do laundry, shop, drive

5    although she does not take public transportation, care for

6    her children, watches television, she listens to music, she

7    reads, and she enjoys working with beads.

8          Procedurally, this case was filed -- this case

9    emanated from applications for Title II and Title XVI

10   benefits protectively filed on April 5, 2021, alleging a

11   disability onset date of January 31, 2018.  At page 370 of

12   the Administrative Transcript she claimed disability based on

13   spinal stenosis, degenerative disc disease, osteoarthritis,

14   anxiety, and depression.  A hearing was conducted on

15   December 13, 2022, by Administrative Law Judge Jennifer Gale

16   Smith, at which a vocational expert also testified.

17   Administrative Law Judge Smith issued an adverse

18   determination on April 6, 2023.  That became a final

19   determination of the Agency on June 29, 2023 when the Social

20   Security Administration Appeals Council denied plaintiff's

21   application for review.  This action was commenced on

22   August 21, 2023, and is timely.

23          In her decision, ALJ Smith applied the familiar

24   five-step sequential test for determining disability.

25          At step one, she concluded that plaintiff had not

1    engaged in substantial gainful activity since January 31,

2    2018.  She did note for purposes of Title II benefits that

3    plaintiff was last insured on December 31, 2023.

4              Plaintiff suffers, according to the administrative

5    law judge, from several severe impairments that impose more

6    than minimal limitations on her ability to perform basic work

7    functions, including obesity, inflammatory polyarthropathy,

8    lumbar degenerative disc disease, cervical degenerative disc

9    disease with radiculopathy, carpal tunnel syndrome, status

10   post-hernia repair, depressive disorder, anxiety disorder,

11   and post-traumatic stress disorder.

12             At step three she concluded that none of those

13   impairments meet or medically equal any of the listed

14   presumptively disabling conditions set forth in the

15   Commissioner's regulations, specifically considering Listings

16   1.15, 1.18, 12.04, 12.05, and 12.06.

17             After surveying the record, the administrative law

18   judge next concluded that notwithstanding her limitations,

19   plaintiff retains the ability to perform light work with

20   various additional limitations both addressing her physical

21   and her mental conditions.

22             At step four, she concluded that plaintiff is

23   incapable of performing her past relevant work which was

24   characterized as general farmworker, cashier, assistant

25   manager, cook, and dishwasher.

1          At step five, with the aid of a vocational expert

2     testifying concerning the hypothetical that was presented

3     mirroring the RFC, the ALJ concluded that plaintiff is

4     capable of performing work available in the national economy

5     and cited as representative occupations those of marker,

6     office helper, and inspector hand packager, and therefore

7     concluded that plaintiff was not disabled at the relevant

8     times.

9          As the parties know, the standard that the court

10    must apply is extremely deferential.  I must determine

11    whether correct legal principles were applied and the

12    resulting determination is supported by substantial evidence.

13    The Second Circuit has addressed this standard, most notably

14    in *Brault v. Social Security Administration Commissioner*, 683

15    F.3d 443, Second Circuit, 2012, and reiterated more recently

16    in *Schillo v. Kijakazi*, 31 F.4th 64, Second Circuit 2022.

17         The plaintiff raises two essential contentions in

18    support of her challenge to the determination of the Agency.

19    She challenges the evaluation of medical opinions in the

20    record, including the administrative law judge's reliance on

21    prior administrative medical findings of state agency

22    physicians.  The focus of the plaintiff's arguments appears

23    to be on her physical capabilities to perform work.  And

24    secondly, she challenges the evaluation of the administrative

25    law judge concerning plaintiff's subjective reports of

1    symptomology.

2         When it comes to evaluation of medical opinions,

3    that is governed by regulations which took effect for

4    applications filed after March 27, 2017, and under those

5    regulations, the Commissioner will not defer or give any

6    specific evidentiary weight, including controlling weight, to

7    any medical opinions, including those from medical sources,

8    but instead must consider whether they are persuasive by

9    primarily considering whether the opinions are supported by

10   and consistent with the record in the case.  20 C.F.R

11   Sections 404.1520c and 416.920c.  An ALJ must explicitly

12   state how persuasive he or she finds all of the medical

13   opinions and explain specifically how the factors of

14   supportability and consistency were considered.

15        The Second Circuit has noted that, first of all, if

16   there is an error in applying these new regulations, the

17   court must make a searching review of the record to determine

18   whether it is harmless and whether the rules were in fact

19   abridged.  *Loucks v. Kijakazi*, 2022 WL 2189293 from the

20   Second Circuit, 2022, and *Estrella v. Berryhill*, 925 F.3d 90

21   from 2019, Second Circuit.  And of course it is well

22   established that in the end, the determination concerning the

23   weighing of medical evidence is for the administrative law

24   judge in the first instance and not a function for the court.

25   *Veino v. Barnhart*, 312 F.3d 578, Second Circuit, 2002.

1    In this case, one of the two major focuses of

2    plaintiff's argument is on prior administrative findings by

3    Dr. C. Krist from September 16, 2021, that appears at 85 to

4    118 and 692 to 694 of the Administrative Transcript, and

5    Dr. Gregory Zito on reconsideration from March 17, 2022

6    appearing at 119 to 158 and 886 to 888 of the record.  Those

7    were discussed by Administrative Law Judge Smith at page 28

8    of the Administrative Transcript, and she found them both to

9    be persuasive.  The plaintiff claims that incomplete files

10   were reviewed by those physicians and that because of the

11   lapse in time, it was error to rely on them.  That is -- the

12   Second Circuit has made it clear in *Camille v. Colvin*, 652

13   F.App'x 25, Second Circuit 2016 at specifically footnote 4,

14   that there's no unqualified rule concerning the lapse of time

15   between the existence of the prior administrative medical

16   finding and the ALJ's decision, the focus is on whether there

17   is room to doubt that the opinion is still valid because

18   there has been deterioration of the plaintiff's condition.

19   *Kidd v. Commissioner of Social Security*, 2019 WL 1260750 from

20   the Western District of New York, 2019.

21       Contrary to plaintiff's claim, Dr. Krist and

22   Dr. Zito both reviewed comprehensive records that included

23   the August 2021 MRI results which are in the record at 898 to

24   900, and the nerve conduction and EMG studies which are at

25   828 to 829.  Dr. Krist referenced those at page 97 of the

1    Administrative Transcript, Dr. Zito referred to them at 134

2    of the Administrative Transcript.

3           When it comes to the question of deterioration,

4    there is no evidence whatsoever that there was significant

5    deterioration from the time of that testing.  The July 14,

6    2022 cervical MRI specifically noted no significant change

7    from August 2021 MRI.  That's at 904 to 905 of the

8    Administrative Transcript and also 894.

9           It is well established that it is proper to rely on

10   prior administrative medical findings if they are supported,

11   and that they can supply substantial evidence supporting a

12   resulting determination.  *Woytowicz v. Commissioner of Social*

13   *Security*, 2016 WL 6427787, Northern District of New York,

14   October 5, 2016, that report and recommendation was adopted

15   on -- at 2016 WL 6426385, October 28, 2016.

16          So I don't find any error, I think that there was a

17   proper assessment by the administrative law judge of the

18   opinions of Dr. Krist and Dr. Zito.  She gave three reasons

19   why she found them to be proper.  One, they are supported by

20   a review of relevant objective medical evidence such as MRIs,

21   x-rays, and EMG and findings set forth in the report.  Two,

22   adding to the persuasiveness of the opinions are the

23   reviewer's familiarity with the Agency's disability programs,

24   policies, and evidentiary requirements, and the fact that the

25   purpose of the review was to render a medical opinion on

1    disability using the Agency's criteria.  And three, in

2    addition, the finding that the claimant is capable of

3    performing a reduced range of light work is consistent with

4    the care claimant provides to her children, vacuuming, doing

5    laundry, and cooking, that's at page 28 of the Administrative

6    Transcript.

7            The plaintiff has focused on some records, medical

8    records that show that her gait is not regular, reduced

9    ranges of motion and so forth.  As the Commissioner's argued,

10   while there may be some indications of that, the overwhelming

11   reports from medical treatment providers is that she has a

12   regular gait.  And I went through carefully the records and I

13   found that notation at 669, 684 to 687 -- I'm sorry, that's

14   the nerve conduction study.  690 to 691 -- no, that's the

15   MRI.  704, 710, 715, 894, 899, 904 -- I'm sorry, 899.  I

16   found that those were treatment providers that noted that

17   plaintiff had a regular gait.

18           So the test that I have to apply is whether a

19   reasonable fact finder would have to conclude otherwise than

20   the administrative law judge, and I can't say that with

21   regard to the weighing of those two medical opinions.

22           The other opinion that is challenged is the opinion

23   from plaintiff's treating nurse practitioner, Maureen

24   Schroettner, and that appears at 1087 to 1088 of the

25   Administrative Transcript.  It is completely debilitating.

1    For example, it states that plaintiff can only lift 5 pounds

2    or less.  She can only sit, stand, and/or walk for one hour

3    or less in an eight-hour workday.  She can never climb,

4    balance, kneel, crouch, crawl, or stoop.  She will be off

5    task more than 50 percent of the time and absent more than

6    four days per month.  There is no significant explanation to

7    supplement and explain these findings.  The administrative

8    law judge addressed the opinion at page 29 and found it not

9    to be persuasive, found that the activities of daily living

10   and treatment record don't support it, the extent of the

11   limitations is not supported by testing, and claimant had a

12   full painless range of motion at both hips and the

13   plaintiff's lumbar range of motion was only minimally

14   limited, that's by reference to an SOS treatment note, and so

15   she found the opinion not to be persuasive.

16        I don't find any error.  In the end, what plaintiff

17   seeks is a reweighing of the medical evidence and that's, as

18   I said before, not something that is properly the function of

19   the court.

20        Turning to the assessment of plaintiff's

21   symptomology, obviously an ALJ must take into account

22   plaintiff's subjective complaints when going through the

23   five-step disability analysis, but it's not required to

24   blindly accept the subjective testimony of a claimant.

25   *Genier v. Astrue*, 606 F.3d 46, Second Circuit 2010.  Instead,

1    the ALJ must make an assessment looking to the factors set

2    forth in Social Security Ruling 16-3p.  Significantly, the

3    ALJ's assessment of an individual's subjective complaints

4    regarding her pain and other symptoms is entitled to

5    substantial deference by a reviewing court.  *Aponte v.*

6    *Secretary of Department of Health and Human Services*, 728

7    F.2d 588, Second Circuit, 1984; *Shari L. v. Kijakazi*, 2022 WL

8    561563, from the Northern District of New York,

9    February 24th, 2022; and *Edward J. v. Kijakazi*, 2022 WL

10   4536257, Northern District of New York, September 28, 2022.

11          And of course when it comes to the burden of proof,

12   it is clearly and squarely upon the plaintiff through step

13   four of the sequential analysis.  *Poupore v. Astrue*, 566 F.3d

14   303, Second Circuit 2009.  The administrative law judge in

15   this case carefully reviewed, and in some detail, the medical

16   history in this case, did a proper analysis of the medical

17   opinions in this record, and found that the plaintiff did not

18   carry her burden of proving greater limitations, focusing,

19   among other things, on her claims being inconsistent with her

20   activities of daily living, her ability to manage and care

21   for her children, and the objective findings and treatment

22   notes.  I find that the plaintiff's symptomology was properly

23   analyzed by the administrative law judge pursuant to SSR

24   16-3p, and so I find no error in that regard.

25          In sum, I find that the correct legal principles

16

1   were applied in this case and the resulting determination is

2   supported by substantial evidence and I grant judgment on the

3   pleadings to the defendant and order dismissal of plaintiff's

4   complaint.

5           Attorney Antonowicz, I sincerely hope that your

6   condition improves and that you return to good health, and I

7   wish both of you a happy new year and all the best for 2025.

8   Thank you.

9           MR. ANTONOWICZ:  Thank you, your Honor.

10          MS. COHN:  Thank you.

11          COURTROOM DEPUTY:  Court is adjourned.

12              (Proceedings Adjourned, 11:31 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4       I, JODI L. HIBBARD, RMR, CRR, CSR, Federal

 5  Official Realtime Court Reporter, in and for the

 6  United States District Court for the Northern

 7  District of New York, DO HEREBY CERTIFY that

 8  pursuant to Section 753, Title 28, United States

 9  Code, that the foregoing is a true and correct

10  transcript of the stenographically reported

11  proceedings held in the above-entitled matter and

12  that the transcript page format is in conformance

13  with the regulations of the Judicial Conference of

14  the United States.

15

16                 Dated this 15th day of January, 2025.

17

18

19                      /S/ JODI L. HIBBARD
                        _____
20                      JODI L. HIBBARD, RMR, CRR, CSR
                        Official U.S. Court Reporter
21

22

23

24

25
```